## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

COLLISION INDUSTRIES MANAGEMENT
SOLUTIONS, LLC, a New Mexico limited liability
company, and JINGLE ENTERPRISES, LLC, a
New Mexico limited liability company,

      Plaintiffs,

v.                                     No. CIV 14-1109 RB/SCY

JAMES NEUMANN, an individual, ADBUY
CURVE, LLC, a Missouri limited liability
company, and OOS INVESTMENTS, LLC, an
Illinois limited liability company,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Collision Industries Management Solutions, LLC ("CIMS") entered into a business venture with Defendant AdBuy Curve, LLC ("AdBuy"). Unhappy with the prospects of the business venture, Plaintiff CIMS sued Defendants alleging breach of contract, fraud, and other causes of action. Defendants moved to dismiss the complaint against them. (Doc. 13.) Having reviewed the parties' submissions and arguments, the Court **DENIES** the motion.

### I.    BACKGROUND

Defendant James Neumann had a business idea involving digital billboard signs. (Compl. ¶ 10, Doc. 1-1.) He called the proposed business PODO Link, LLC ("PodoLink"). (*Id.* ¶ 11.) In an effort to recruit investors, Defendant Newmann met with the members of CIMS, James Guthrie and Curt Jingle. (*Id.* ¶ 10.) After a series of communications and negotiations, CIMS decided to invest in PodoLink. (*Id.* ¶¶ 11, 12.) In August 2011, CIMS made an initial $25,000 investment in PodoLink. (*Id.* 12.)

In February 2012, Defendant Neumann traveled to Albuquerque, New Mexico, in order to meet with CIMS's members and persuade CIMS to invest more money in PodoLink. (*Id.* ¶¶ 13-14.) During this meeting, Defendant Neumann "portrayed himself as an experienced expert in outdoor advertising." (*Id.* ¶ 15.) He claimed that he already had the necessary software specifications and had paid a software consulting firm $300,000 to develop the technology. (*Id.* ¶¶ 16(1), 17.) Further, Defendant Nuemann claimed to own more than 300 digital and static billboards. (*Id.* ¶ 16(2).) Relying on these assertions, CIMS invested an additional $110,000 in PodoLink. (*Id.* ¶¶ 19, 37.) Soon after making the additional investment, CIMS discovered that the software was not nearly as well developed as CIMS initially thought. (*Id.* ¶¶ 20-21.) On March 19, 2012, CIMS supplemented its investment with $30,000 for a total of $165,000. (*Id.* ¶ 25.)

In July 2012, the parties agreed to an Operating Agreement for PodoLink. (*Id.* ¶ 27.) The signatories to the Agreement were (1) Defendant AdBuy—a limited liability company managed by Defendant Neumann—which took a 46.75% interest; (2) Plaintiff CIMS, which took a 46.75% interest; (3) the Jerome F. Beckes & Nanci S. Beckes Revocable Trust, which took a 1.5% interest; and (4) Development Partners, LLC, which took a 5% interest. (*Id.* ¶¶ 27 (incorporating Operating Agmt.), 28; Operating Agmt. art. VIII, Doc. 14-1.) The Operating Agreement reflects that CIMS made a $250,000 initial capital contribution. (Operating Agmt. art. VIII.) The Operating Agreement defines PodoLink as a limited liability company registered in Missouri under Missouri law. (*Id.* art. III.) The signatories agreed that Missouri law would govern the interpretation of the Operating Agreement. (*Id.* § 23.02.)

After signing the Operating Agreement, CIMS claims that "[t]he members of PodoLink agreed upon a division of tasks to move forward with PodoLink's business plan." (Compl. ¶ 29.)

Specifically, CIMS states that Defendants Neumann and AdBuy agreed to "coordinat[e] the launch of the PodoLink product in Times Square (an event intended to coincide with the Digital Signage Expo trade show in February 2013)." (*Id.*) CIMS also avers that AdBuy failed to make agreed-upon capital contributions. (*Id.* ¶ 32.)

In September 2013, concerned about PodoLink's stability, the CIMS members met with Defendant Neumann in Albuquerque. (*Id.* ¶ 34.) Allegedly, "CIMS advised Defendant Neumann that unless he and AdBuy agreed to certain conditions, including managerial changes, CIMS would take legal action." (*Id.*) Although Defendant Neumann agreed to the changes, he "breached their agreement within a week." (*Id.*) CIMS complains that "PodoLink is not a viable business venture" and has "effectively been abandoned by its members, including AdBuy." (*Id.* ¶ 35.)

Plaintiff filed suit with the state court in the Second Judicial District, Bernalillo County, New Mexico. (Compl.) Defendants timely removed the action based on diversity. (Doc. 1.) The initial Complaint joined claims made by Plaintiff Jingle Enterprises, LLC against Defendants Neumann and OOS Investments, LLC. (Compl. ¶¶ 66-107.) The parties entered a stipulated dismissal of Plaintiff Jingle Enterprises' claims. (Doc. 12.) Based on that stipulation, Jingle Enterprises is no longer a plaintiff in this case and OOS Investments is no longer a defendant. Defendants Neumann and AdBuy now move to dismiss the remaining causes of action in the Complaint raised by Plaintiff CIMS. (Doc. 13.)

## II.    PROCEDURAL STANDARD

Defendants move to dismiss under Federal Rules of Procedure 12(b)(1) and 12(b)(6). (Doc. 13.) To survive a motion to dismiss under 12(b)(6), a "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas*

*Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Similarly, when a defendant raises a facial challenge to a district court's jurisdiction under Rule 12(b)(1), the court's review is akin to that of a 12(b)(6) motion.  *See Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (explaining that courts apply the same standard for Rule 12(b)(6) motions and facial challenges under Rule 12(b)(1)).

When reviewing the sufficiency of a complaint, the court must first identify the factual allegations and disregard any conclusory statements.  *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Next, the court must determine if the claimant's factual allegations state a plausible claim.  *Id.*  The complaint must have "enough factual matter (taken as true) to suggest that [the claimant] is entitled to relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III.   SUBSTANTIVE LAW

CIMS asserts causes of action implicating contract law and tort law.[1]  Defendants contend that the contract and tort claims must be considered under Missouri law.  (Doc. 14 at 6-7.)  In response, CIMS argues that New Mexico law should apply to its fraud claims.  (Doc. 17 at 15 n.4.)

This Court follows New Mexico's choice of law principles.  *See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999) (holding that district courts must "look[] to the substantive law of the forum state, including its choice of law

---

[1] CIMS's Complaint includes a request for relief under the Declaratory Judgment Act.  In its briefing, CIMS stated that it no longer seeks a declaratory judgment.  (Doc. 17 at 12.)  The Court considers this claim to be voluntarily dismissed.

principles, to determine the applicable substantive law") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  When deciding choice of law issues, New Mexico follows the First Restatement of Conflicts of Laws.  *See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 775 P.2d 233, 235 (N.M. 1989) ("New Mexico adheres to a traditional conflicts of law analysis contained in Restatement (First) of Conflicts of Law (1934).").  Under the First Restatement, the "place of contracting" rule applies to contract claims and the "place of wrong" rule applies to tort claims.  Restatement (First) of Conflict of Laws §§ 311, 377 (1934); *Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 329 P.3d 749, 750 (N.M. Ct. App.), *cert. denied*, 328 P.3d 1188 (2014) (applying "place of the accident" to negligence claims and "place of the contract" to contract claims).  "The initial step in conflicts analysis is *characterization:* deciding the area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue."  *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006) (citations omitted).

For any causes of action rooted in contract law and based on the Operating Agreement, Missouri law will apply.  New Mexico courts, while following the First Restatement, also "respect[] party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."  *Strausberg v. Laurel Healthcare Providers, LLC*, 304 P.3d 409, 416 (N.M. 2013) (quoting *Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1218 (N.M. 2008)).  The Operating Agreement between CIMS and Defendants contains a provision that states, "This Agreement and its interpretation shall be governed exclusively by its terms and by the laws of the State of Missouri, and specifically the [Missouri Limited Liability Company] Act."  (Operating Agmt. § 23.02, Doc. 14-2.)  Neither party claims

that applying Missouri law to the Agreement would violate New Mexico public policy. Therefore, the choice of law provision is valid under New Mexico law.

In contrast, New Mexico law applies to CIMS's fraud claims. Defendants argue that Missouri law should apply to the fraud claims "[b]ecause the obligations and rights of the PodoLink members spring from Missouri law . . . ." (Doc. 14 at 18.)  The Court is not persuaded by this argument.  CIMS's fraud claims in Count 4 and 5 challenge Defendants' obligations under statute and the common law, not Defendants' obligations under the contract.  (Compl. ¶¶ 52-65.)  Fraud causes of action are classified as tort claims.  *See Register v. Roberson Const. Co.*, 741 P.2d 1364, 1367 (N.M. 1987) (explaining the elements for the "tort of fraud"); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (holding that securities fraud actions are rooted in common-law tort actions for deceit and misrepresentation).  Tort actions accrue in the "place of wrong."  Restatement (First) of Conflict of Laws § 377; *see also Torres v. State*, 894 P.2d 386, 390 (N.M. 1995) ("[T]his Court generally follows the doctrine of *lex loci delicti* and applies the law of the state in which the wrongful conduct occurred.").  According to the First Restatement, "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made."  *Id.* at n.4.  Here, CIMS suffered its losses in New Mexico, where its members are domiciled.  Therefore, New Mexico law applies to the fraud claims.

## IV.   DISCUSSION

Defendants challenge CIMS's Complaint on four grounds: (1) the Court does not have jurisdiction to hear CIMS's claims; (2) the Complaint does not state a plausible claim; (3) this Court is not the proper venue; and (4) CIMS has not joined the necessary parties.  The Court addresses each challenge below.

**A.  Jurisdiction and Abstention**

Defendants claim that the Court does not have jurisdiction to grant the relief that CIMS seeks and, accordingly, must dismiss all the claims.  (Doc. 14 at 6.)  Specifically, Defendants argue that all of CIMS's claims require dissolution of PodoLink, a Missouri Limited Liability Company.  (*Id.* at 8-10.)  Citing to Missouri and New Mexico law, Defendants assert that this Court, sitting in New Mexico, does not have jurisdiction to dissolve a Missouri limited liability company.  (*Id.* at 10-12.)

The Court recognizes the validity of Defendants' argument.  According to Missouri statute, the only courts with the power to dissolve Missouri limited liability companies are the state courts sitting in the county where the company is located.  Mo. Rev. Stat. § 347.143.2 (stating that "the circuit court for the county in which the registered office of the limited liability company is located may decree dissolution of a limited liability company").  Courts, bound by the laws of the state in which they sit, generally lack jurisdiction to dissolve out-of-state corporations.  *See* 17A Fletcher Cyc. Corp. § 8579 ("The general rule is that neither through its legislature nor its courts can one state declare the forfeiture of the charter of a corporation of another state or country or otherwise dissolve the corporation.").  Moreover, federal courts typically abstain from dissolving corporations, including both in-state and out-of-state corporations.  *See Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) ("[E]very federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming jurisdiction existed.").  The Supreme Court has long advised federal courts to decline jurisdiction "where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state."  *Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935); *see also Grimes*

7

*v. Crown Life Ins. Co.*, 857 F.2d 699, 703 (10th Cir. 1988) (applying the principle of *Williams* to decline jurisdiction over a case involving the liquidation of insurance company).

Before determining if it has appropriate jurisdiction, the Court must first characterize CIMS's claims. The Court must determine if CIMS brings equitable claims that require dissolution or otherwise go to the heart of PodoLink's internal affairs. If so, abstention may be appropriate. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (recognizing the power of federal courts to stay, dismiss, or remand equitable actions where appropriate); *Williams*, 294 U.S. at 185 (advising federal abstention over cases that "interfere[] with the internal affairs of a domestic corporation"). On the other hand, if CIMS plausibly seeks damages at law, the Court may not glibly dismiss CIMS's claims. *See Quackenbush*, 517 U.S. at 721 (holding that, under abstention principles, courts can stay actions for damages, but not dismiss or remand the actions).

Importantly, CIMS does not expressly request PodoLink's dissolution or the liquidation of its assets. (Compl.) At this time, there is no pending dissolution or liquidation proceeding in state court. Notwithstanding, Defendants argue that CIMS's claims manifest an intent to liquidate and dissolve PodoLink. (*Id.* at 8-10.) CIMS counters that while its claims could support a petition for dissolution, CIMS, as the master of its claims, has chosen not to seek such an action. (Doc. 17 at 4, 11.) In its response brief, CIMS takes great pains to explain how the Complaint states plausible claims for legal damages. (*Id.* at 4-12.)

The Court does not lightly give up its jurisdiction. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (recognizing the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). And, "[o]f course, even when states formulate comprehensive schemes for . . . liquidation," creating a

situation where abstention may be appropriate, "federal courts may properly exercise their jurisdiction in some cases." *Grimes*, 857 F.2d at 704. The Tenth Circuit identified "[a] number of factors" to consider, including "whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding"; "whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues;" and "whether difficult or unusual state laws are at issue." *Id.* at 704-05. The Court will bear these questions, and the extent of its authority, in mind as it considers Plaintiff's individual claims below.

## B. Sufficiency of the Pleadings

In its brief, CIMS clarifies that it only brings three causes of action: breach of contract, common law fraud, and securities fraud. (Doc. 17 at 13-23.) For each claim, the Court will consider whether CIMS has pled a plausible claim that the Court may appropriately exert jurisdiction over.

### 1. Breach of Contract

In its second cause of action, CIMS asserts a breach of contract claim for damages. (Compl. ¶¶ 44, 46, 47.) For the most part, Defendants do not suggest that this particular cause of action requires PodoLink's dissolution. Instead, Defendants attack this cause of action on plausibility grounds. (Doc. 14 at 17-18.) In their Reply, Defendants briefly argue that CIMS's breach of contract claim seeks assets which would require PodoLink's liquidation. (Doc. 19 at 6.) However, the alleged wrongdoers in this cause of action are Defendants Neumann and AdBuy, not PodoLink. (Compl. ¶¶ 43-47.) As such, Defendants' assets are in play, not PodoLink's. Therefore Defendants' argument that the Court does not have jurisdiction to hear this claim is unpersuasive. Defendants do not offer any other reason why the Court should abstain from hearing this claim

CIMS claims that Defendants breached the parties' "Operating Agreement and related agreements." (Compl. ¶¶ 45-46.)  Specifically, CIMS alleges that Defendant AdBuy "fail[ed] to make capital contributions to meet PodoLink's expenses and obligations," although CIMS avers that the breaches "are not limited to" that particular allegation.  (*Id.* ¶¶ 32, 45.)  Pointing to the Missouri statute, Defendants argue that CIMS does not have the authority to enforce Defendant AdBuy's contribution obligations.  (Doc. 14 at 17); Mo. Ann. Stat. § 347.099 ("A member's obligation to make a contribution shall not be enforceable by a third-party creditor of the limited liability company or any other member  . . . .").  In its Response, CIMS concedes that it lacks the authority to bring a claim based on unmet contribution obligations.  (Doc. 17 at 21.)

Regardless, CIMS avers that it has stated a breach of contract claim based on the Operating Agreement.  CIMS looks to its allegation that "[t]he members of PodoLink agreed upon a division of tasks to move forward with PodoLink's business plan," including Defendants AdBuy's and Neumann's alleged promise to coordinate PodoLink's launch in Times Square in February 2013.  (Compl. ¶ 29.)  Apparently, Defendants failed to launch the product as promised and "repeatedly failed to perform tasks they had agreed to perform."  (*Id.* ¶ 31.)  CIMS argues that these allegations breach the Operating Agreement's command that "[n]o Member shall, without the consent of the other Members, do any act detrimental to the best interests of the Company or which would make it impossible to carry on the ordinary purpose the Company." (Operating Agmt. § 14.05.)  Defendants concede that the Operating Agreement is a valid contract which imposes obligations on the parties, but counter that Plaintiff failed to plead facts sufficient to overcome Defendants' immunity.  (Doc. 19 at 5-6.)  However, plaintiffs have no "obligation to anticipate such a defense" and plead such facts in their complaints.  *Gomez v.*

*Toledo*, 446 U.S. 635, 640-41 (1980). CIMS's allegations state a plausible breach of the Operating Agreement.

Separately, CIMS's Complaint refers to "related agreements" which Defendants allegedly breached. (Compl. ¶¶ 45-46.) The Court notes that the Operating Agreement "supersedes all prior agreements and understandings, both written and oral," so any "related agreements" must have been formed after the Operating Agreement came into effect. (Operating Agmt. § 23.13.) The Complaint alleges that in September 2013, CIMS met with Defendant Neumann and agreed that Defendant Neumann would agree to managerial changes or CIMS would take legal action. (Compl. ¶ 34.) According to the Complaint, Defendants "Neumann and AdBuy . . . breached their agreement within a week." (*Id.*) Defendants argue that CIMS did not properly plead that these "related agreements" were contracts. (Doc. 14 at 17.)

Under Missouri law, the essential elements of a breach of contract action are: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc).[2] With regard to the managerial-change agreement, CIMS plead that CIMS and Defendants had an agreement with specified terms that Defendant breached, to CIMS's detriment. (Compl. ¶¶ 34, 46.) At the pleading stage, this is sufficient.

Finding that CIMS pled a plausible claim over which the Court may assert jurisdiction, the Court declines to dismiss CIMS's breach of contract claim.

---

[2] Based on insufficient information, the Court cannot yet determine whether Missouri or New Mexico law governs the alleged formation of the managerial-change contract. Under New Mexico law, "to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 780 (N.M. 1993). In any future motions, the parties must address which state's law should govern this alleged contract and why.

### 2. *Common Law Fraud*

CIMS alleges that Defendants made fraudulent representations when seeking CIMS's investments.  (Compl. ¶¶ 52-56.)  To make a fraud claim under New Mexico law, CIMS must allege that (1) Defendants made a misrepresentation of fact, (2) Defendants knew that the representation was false or recklessly disregarded the truth, (3) Defendants intended to deceive CIMS and induce its reliance on the misrepresentation, and (4) CIMS detrimentally relied on the misrepresentation.  *See Williams v. Stewart*, 112 P.3d 281, 290 (N.M. Ct. App. 2005) (stating elements for fraud); N.M. Rules Ann. Civ. Unif. Jury Instr. § 13-1633.

CIMS bases its fraud claim on two representations: one regarding billboards and a second regarding the status of PodoLink's software.  Allegedly, Defendant Neumann represented that he "owned or controlled access to more than 300 digital and static billboards" that PodoLink could use to sell advertising space.  (Compl. ¶ 16(2).)  He further led CIMS to believe that he already had a well-researched "software solution" for the PodoLink platform.  (*Id.* ¶¶ 16(2), 17.)  CIMS claims that these statements were untrue and that Defendant Neumann only made these misrepresentations to convince CIMS to invest additional money into PodoLink.  (*Id.* ¶¶ 16, 19, 53.)  Relying on these misrepresentations, CIMS in fact invested additional funds.  (*Id.* ¶ 19.)  Defendant argues that these allegations are insufficient because CIMS knew the truth before ultimately deciding to sign the Operating Agreement.  (Doc. 14 at 19.)  This, however, states a defense which Plaintiff did not have to anticipate in its pleadings.  *Gomez*, 446 U.S. at 640-41.  The allegations in the Complaint are legally sufficient according to New Mexico law.  *See Williams*, 112 P.3d at 290 (stating elements for fraud).

Defendant further argues that Plaintiff's fraud claim fails to provide sufficient notice as required by Rule 9(b) of the Federal Rules of Civil Procedure.  (Doc. 14 at 19.)  The Rule states

12

that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "This language has been read to require plaintiffs to identify the time, place, content, and consequences of the fraudulent conduct." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010). The requirements of Rule 9(b) must be read in light of the provisions of Rule 8 for notice pleading.  *See Seattle First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir. 1986). CIMS alleged that Defendant Neumann made two clearly-defined misrepresentations when he traveled to Albuquerque in February 2012, both of which induced CIMS into investing an additional $110,000 into PodoLink.  (Compl. ¶¶ 13-19.)  These allegations gave Defendants sufficient notice of the fraud claim within the meaning of Rule 9(b).

Finally, Defendants challenge that the Court does not have jurisdiction to grant CIMS relief on its fraud claim.  Plaintiff seeks two alternate remedies for its fraud claim: to rescind the agreement and to recover legal damages.  At the pleading stage, plaintiffs can seek both types of damages on fraud claims.  *See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 820 P.2d 1323, 1324 & n.1 (N.M. 1991) (explaining that the plaintiff's complaint sought both rescission and damages for fraud, although the plaintiff ultimately elected to pursue the remedy of rescission).  Defendants assert that Plaintiff has chosen to pursue rescission and to drop the damages claim.  (Doc. 14 at 10.)  Plaintiff responds that the assertion is untrue: Plaintiff still seeks money damages at this stage of the litigation.  (Doc. 17 at 4, 7.)  The Court sees no reason why it cannot assert jurisdiction over a damages-based fraud claim asserted against Defendant Neumann under New Mexico law.  Defendants' claim that the Court lacks jurisdiction to award rescission takes more analysis.

13

To summarize Defendants' argument, Defendants aver that this Court cannot rescind the Operating Agreement because doing so would require dissolution of PodoLink. Under Missouri law, "rescission of a contract involves restoration of the status quo of the parties, unless the parties have agreed otherwise." *Dilts v. Lynch*, 655 S.W.2d 118, 121 (Mo. Ct. App. 1983). This principle is true in New Mexico law as well. *See Prudential Ins. Co. of Am. v. Anaya*, 428 P.2d 640, 645 (N.M. 1967) ("A suit for rescission asks for the restoration of the status quo ante . . . . which [means] that there must be an offer to return what has been received.") (citations omitted). This precept, Defendants reason, "would require redistributing the parties' initial investments in PodoLink." (Doc. 14 at 9.) Arguably, such an action would in turn require dissolution of PodoLink, which this Court, sitting in New Mexico, does not have the power to command. (*Id.*) The Court has no intention of ordering PodoLink's dissolution.

The Court is not persuaded by Defendant's arguments for three reasons. First, if CIMS's claim for fraud implicates the Operating Agreement, CIMS's rescission of its assent would not necessarily require dissolution of PodoLink. If the Court were to grant rescission based on fraud, the order would require CIMS and Defendant Neumann to restore the status quo between the two of them—the Court's order would not reach the relationships among nonparties. *See Anaya*, 428 P.2d at 645 (explaining status quo). In the event that CIMS withdraws from the Operating Agreement, the other members could continue to operate PodoLink as provided in the Operating Agreement. (Operating Agmt. § 16.05(a)); *see also* Mo. Ann. Stat. § 347.137 (stating that a majority of the members of a limited liability company may choose to continue operating the company after another member withdraws). Should the Court's order somehow render the entire Operating Agreement unworkable, even that event would not dissolve PodoLink. Operating agreements are not necessary to maintain the existence of a limited liability company. Although

14

Missouri law requires limited liability companies to adopt operating agreements, "it does not contain a deadline for the adoption of an operating agreement and it does not specify any consequences of the failure of the members of an LLC to adopt an operating agreement."  1A Mo. Prac., Methods of Prac.: Transact. Guide § 32.6 (4th ed.).  Theoretically, the members could revise their Operating Agreement in accordance with the articles of incorporation.

Second, CIMS offers an alternative theory for its rescission claim.  In its Response, CIMS posits that the fraud described in the Complaint did not induce CIMS to sign the Operating Agreement; rather the fraud induced CIMS to enter into an investment transaction that was separate and apart from the Operating Agreement's terms.  (Doc. 17 at 9.)  CIMS asks the Court to "rescind[] the transactions through which CIMS paid Neumann . . . ." (*Id.* at 10.)  Although CIMS's brief refers to multiple transactions, the only transaction implicated by the fraud allegations is the investment of $110,000 made in February 2012.  (Compl. ¶¶ 18-21.)  If this version of CIMS's story is accurate, and this investment was a separate contract, then CIMS may seek to rescind the agreement.  Such a rescission would not implicate the Operating Agreement or the incorporated status of PodoLink.

Third, Defendants repeatedly argue that restoring money to CIMS would require liquefying PodoLink's assets.  However, the money liability runs to Defendant Neumann, not necessarily to PodoLink.  For that reason, this argument, too, is unpersuasive.

The Court finds it appropriate to assert its jurisdiction over CIMS's fraud claims.  While the Court recognizes Missouri's comprehensive scheme governing the formation and liquidation of limited liability corporations, the Court finds that hearing CIMS's claims in this action would not interfere with that scheme.  *See Grimes*, 857 F.2d at 704.  Specifically, there is no active liquidation proceeding in Missouri that would conflict with the Court's ruling.  Nor is common

law fraud a "difficult or unusual state law[]" issue that Missouri seeks to regulate in special forums. *Id.* at 704-05. After analyzing the nature of CIMS's fraud claim and the potential remedies, the Court finds jurisdiction proper.

Presently, CIMS has alternate legal theories and seeks relief in the alternative. Ultimately, CIMS will need to produce evidence to support its characterization of the agreements it made with Defendants. Eventually, CIMS will also need to elect a remedy. But these choices can be made at a later stage in the litigation, after the parties have conducted discovery. For now, CIMS has stated a plausible claim for relief over which the Court can assert jurisdiction.

### 3. Securities Fraud

Under New Mexico's security fraud law, "It is unlawful for a person, in connection with the offer, sale or purchase of a security, directly or indirectly":

A. to employ a device, scheme or artifice to defraud;

B. to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances pursuant to which it is made, not misleading; or

C. to engage in an act, practice or course of business that operates or would operate as a fraud or deceit upon another person.

N.M. Stat. Ann. § 58-13C-501. New Mexico's definition of "security . . . includes any interest in a limited partnership or a limited liability company." N.M. Stat. Ann. § 58-13C-102(DD)(6). The Complaint seeks to hold Defendant Neumann and AdBuy civilly liable for securities fraud. (Compl. ¶ 65.) To do so, CIMS must show that Defendants sold CIMS a security "by means of an untrue statement of a material fact," that CIMS did not know the truth, and that CIMS "in the exercise of reasonable care, could not have known of the untruth or omission." N.M. Stat. Ann. § 58-13C-509(B).

16

CIMS's allegations in support of its securities fraud claim overlap with its allegations in support of its common law fraud claim.  In sum, CIMS alleges that Defendant Neumann traveled to Albuquerque in February 2012 to induce CIMS into investing in PodoLink; that Defendant Neumann knowingly made material representations of fact regarding the billboards and software to induce CIMS's investment; and that CIMS relied on these misrepresentations when it made its decision to invest money into PodoLink.  (Compl. ¶¶ 13-14, 16-17, 19, 59-63.)  These allegations give Defendant legally sufficient notice of a plausible claim within the meaning of Rules 8 and 9 of the Federal Rules of Civil Procedure.  Additionally, the Court has authority to hear a fraud claim seeking legal damages under the New Mexico statute.

Defendants' motion to dismiss CIMS's securities fraud claim is denied.

## C.  Venue Challenge

Defendants move to dismiss CIMS's Complaint on the basis that venue in New Mexico is improper.  (Doc. 14 at 13.)  Federal Rule of Civil Procedure 12(b)(3) permits dismissal for improper venue, but only when venue is improper under the federal venue statutes.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013).  According to federal statute, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C.A. § 1391(b)(2).  As found above, a substantial part of the events giving rise the CIMS's claims occurred in New Mexico.  For that reason, venue is proper within the meaning of the federal venue statutes.  Defendant's motion to dismiss on this ground is denied.

## D.  Necessary Parties

Finally, Defendants argue that the Court must join certain indispensible parties before continuing with the litigation.  (Doc. 14 at 22.)  Defendants argue that the two other investors in

PodoLink, namely Development Partners, LLC and the Jerome F. Beckes & Nanci S. Beckes Revocable Trust, must be joined in this action.  (*Id.*)  The Court declines to consider Defendants' doomsday arguments about the impending dissolution and liquidation of PodoLink, given the Court's findings that hearing this action will not necessitate PodoLink's liquidation. However, Defendants also argue that anytime litigation relating to a contract is pursued, all the parties to the contract are indispensible.  (Doc. 14 at 22.)

The issue of joinder is governed by Rule 19 of the Rules of Civil Procedure.  Under Rule 19, "[i]f a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).  A person is a "required" party when, among other reasons, "in that person's absence, the court cannot accord complete relief among existing parties" or when the litigation "as a practical matter" may impair the person's ability to protect its interests in the subject matter of the action.  Fed. R. Civ. P. 19(a)(1)(A), (B)(i).  If a party is necessary to the action but joinder is "not feasible," then the court must apply Rule 19(b) to determine whether, "in equity and good conscience," the party is "indispensable."  Fed. R. Civ. P.  Rule 19(b).

The parties have not provided the Court with sufficient information to determine if the nonparty partners in PodoLink are necessary or feasibly joined.  At this stage, CIMS's claims for breach of contract, fraud, and securities fraud may implicate PodoLink's Operating Agreement, but they may not.  Without a fuller understanding of the nature of CIMS's claims and the agreements at issue, the Court cannot say that PodoLink's members have an interest in the litigation.  Furthermore, the Court does not know the citizenship of PodoLink's members or whether the Court can assert jurisdiction over them.  Based on the lack of information, the Court declines to join the nonparty members of PodoLink.

## V.  CONCLUSION

This litigation concerns a dispute between two members of a limited liability company. Defendants' moved to dismiss Plaintiff CIMS's Complaint on several grounds, all of which the Court denies.  First, the Court finds that it may appropriately assert jurisdiction over CIMS's claims without necessitating the dissolution of PodoLink.  Second, the Court further finds that CIMS stated plausible claims for breach of contract, fraud, and securities fraud.  Third, the Court denies Defendants' motion to dismiss for improper venue.  Finally, the Court does not have adequate information to determine whether the nonparty members of PodoLink are required parties in this action.

**THEREFORE**,

**IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss Counts 1 Through 5 of the Complaint (Doc. 13) is **DENIED**; and

(2)     Plaintiff CIMS's claim for declaratory judgment is dismissed without prejudice.

**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE